Dear Mr. Kling:
You requested the opinion of this office on several questions concerning the Office Facilities Corporation (the "Corporation"), created pursuant to R.S. 39:1798.1, et seq.
 1. Is the Corporation able to sell corporate assets without any amendments to existing legislation.
The Corporation was authorized to be incorporated as a non-profit corporation pursuant to the provisions of the Office Facilities Corporation Act, La. R.S. 39:1798, et seq. (the "Act"). Section 1798.6 of the Act provides with respect to the powers of the Corporation in part as follows:
 A. In addition to the powers granted it by the General Nonprofit Corporation Law, Title 12 of the Louisiana Revised Statutes of 1950, the corporation shall have power to undertake any project, to provide for the financing thereof, and in connection therewith:
 * * * * * * *
 (8) To enter into any and all agreements or contracts, execute any and all instruments, and do and perform any and all acts or things necessary, convenient, or desirable for the purposes of the corporation or to carry out any power expressly given in this Chapter. (Emphasis added)
In addition to the above language of the Act, the general law on the powers of non-profit corporations, La. R.S. 12:207, provides in part:
 D. Except as otherwise provided in the articles or by-laws, a corporation may borrow money, purchase immovable property, or sell, lease, encumber or otherwise alienate any of its immovable property, only if a resolution so authorizing has been approved by the voting members at a regular or special meeting, convened after notice of its purpose. A resolution authorizing the borrowing of money need not specify the particular amounts, rates of interest or times of maturity of the loans, but these and similar provisions may be authorized by the directors. (Emphasis added)
While a review of the Corporation's enabling legislation does not reveal a specific provision allowing for the sale of corporate assets, if a sale of the corporate assets is necessary, convenient, or desirable for the purposes of the Corporation, the Corporation would have that authority under the general non-profit corporation law.
While not directly on point, it should be noted that Op.Atty.Gen. No. 92-550, regarding the Hotel Dieu Hospital transaction, concluded that the Corporation had the right to assign its interest in a purchase agreement to acquire immovable property to the Louisiana Public Facilities Authority, a public trust.
 2. Is there any provision of the indenture agreements or lease agreements that would prevent the sale of corporate assets if the answer to the aforementioned question is yes.
Yes. The undersigned is unaware of any assets of the Corporation which are not subject to the Agreement to Lease and Option to Purchase between the Corporation and the State of Louisiana (the "Lease Purchase Agreement"), which was executed in connection with the Corporation's $17,000,000 Capital Facilities Bonds (Statewide Lease/Purchase Program), Series 1990 (the "Bonds"). The Corporation has leased to the State the "Projects" which are the building known as the Champion Insurance facility in East Baton Rouge Parish, the Wooddale Towers facility located in East Baton Rouge Parish, the Brandywine Office Building located in Lafayette Parish and the building known as the Harvey Oil facility located in Jefferson Parish. It is assumed for the purpose of this opinion that these four properties are the sole corporate assets.
Section 2.1 of the Lease Purchase Agreement provides that the term of the Lease Purchase Agreement ends on December 1, 2010 or such earlier time as the Bonds have been repaid in full. Section 2.1 further provides that upon expiration of the Term of the Lease Purchase Agreement, title to the Project, and any improvements constituting a part thereof or additions thereto, shall be transferred to the State or, at the option of the State, to any assignee or nominee of the State.
Section 20 of the Lease Purchase Agreement gives the Lessee the exclusive right and option, which shall be irrevocable during the term of the Lease Purchase Agreement, to purchase all but not less than all of the Projects on any Interest Payment Date after December 1, 2001, upon payment of the option price.
Therefore, the Lease Purchase Agreement provides that the property will be transferred to the State upon the termination of the Lease Purchase Agreement and allows for an earlier sale of all, but not less all of the Projects, to the State but not before December 1, 2001, which option is irrevocable during the term of the Lease Purchase Agreement.
Accordingly, the bond documents currently prohibit the sale of the Projects, which are leased to the state to be used for essential governmental purposes. The documents do allow for amendments thereto in accordance with the procedures and requirements set forth therein; however, an amendment to allow for the sale of one or more of the facilities, the lease of which is the security for the bonds, would be difficult, if not impossible, to accomplish. It would necessitate the consent of two-thirds of the holders of the bonds, rating agency approval, and the opinion of bond counsel.
It is possible that the security for the bonds could be modified and the documents changed accordingly, in the event the outstanding bonds were refunded.
 3. Is it legally permissible for the state to provide appropriation assistance (appropriate funds) to the Corporation for operational or capital improvement purposes?
Section 5 of the Lease Purchase Agreement obligates the Lessee to maintain the Projects, at its own expense, during the term of the Agreement. The Lessee is to provide all security service, custodial service, janitorial service and other services necessary for the proper upkeep and maintenance of the Projects and the improvements thereon. The Corporation has no obligation to incur any expense of any kind or character in connection with the management, operation or maintenance of the projects during the term of the Lease Purchase Agreement. Furthermore, after certain initial improvements are completed, the Corporation is not required to make any improvements, alterations, changes, additions, repairs or replacements of any nature whatsoever in or to the Projects. Section 13 of the Lease Purchase Agreement gives the Lessee the right during the term of the Agreement to make any additions or improvements to the Projects so long as the fair market value of the Projects is not reduced.
Under these provisions the legislature could appropriate moneys to the agencies which are renting space from the Corporation to make certain improvements to the projects. Furthermore, the legislature could appropriate moneys to the Lessee to construct improvements to the buildings.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH/